IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERMAINE GORDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 06 C 4957 |
| v. | ) |
| | ) Suzanne B. Conlon, Judge |
| BOARD OF TRUSTEES OF GOVERNORS STATE UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Germaine Gordon, a former employee of Governors State University, sues the university's Board of Trustees ("the Board"), alleging violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-54. Gordon contends the board interfered with her substantive FLMA rights and retaliated against her for taking medical leave. The Board moves for summary judgment. Gordon filed no materials in opposition to the motion. For the reasons set forth below, the summary judgment motion is granted.

## BACKGROUND

### I. Local Rule 56.1

The Board filed a statement of material facts pursuant to Local Rule 56.1(a)(3). Def. Facts, Dkt. No. 29 (Mar. 19, 2007). Although properly served, Gordon failed to respond. As a result, the court deems admitted all material facts set forth in the Board's Rule 56.1(a)(3) statement. L.R. 56.1(b)(3)(C); *Malec v. Stanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (Castillo, J.). Gordon's failure to comply with Rule 56.1 does not result in automatic summary judgement; the court must still evaluate the facts in the light most favorable to her. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

## II. Facts

Gordon was hired by the university in January 2002. Def. Facts at ¶ 3. She worked primarily for Dr. Roger Oden, dean of the College of Arts and Sciences, as a coordinator of administrative and academic services. *Id.* at ¶¶ 3, 5. Gordon's written job description indicates her employment focused on completing and submitting "administrative reports and related projects," including the department budget, employee evaluations, and short- and long-term university planning reports. *Id.* at ¶ 10; Ex. G at Ex. 1. Despite her formal job description, Gordon was expected to assist the dean depending on the college's needs. *Id.* at ¶ 8; Ex. F at 10-11. Dr. Oden had discretion to modify Gordon's job duties when necessary. *Id.* at ¶ 9. When Dr. Oden stepped down in July 2005, Dr. Sandra Mayfield became the acting dean and Gordon's direct supervisor. *Id.* at ¶ 6.

Gordon was diagnosed with breast cancer in November 2004. *Id.* at ¶ 18. She requested eight weeks off between January and March 2005 for treatment. *Id.* at ¶ 19. Dr. Oden, in conjunction with the university's human resources department, granted her request. *Id.* at ¶ 20. From April 22 until May 2, 2005, Gordon worked from home while receiving additional cancer treatment. *Id.* at ¶ 22. She was not required to use sick leave or vacation time while working from home. *Id.* at ¶ 23. Gordon also took leave from August 2 through August 15, 2005, and in September 2005. *Id.* at ¶¶ 27, 37. During these periods, her job duties were split among staff members; non-urgent matters were left until she returned. *Id.* at ¶ 7, 33. Gordon resumed her coordinator position full-time when her treatment was complete. *Id.* at ¶ 21. Neither Dr. Oden nor Dr. Mayfield objected to any of Gordon's time off. *Id.* at ¶ 38.

Shortly after Dr. Mayfield began as acting dean, Gordon requested a pay raise. *Id.* at ¶ 39. According to Gordon, Dr. Oden had approved the raise prior to leaving. *Id.* at ¶ 39. Dr. Mayfield

2

stated that if she were to recommend an increase, it must be justified by Gordon's job description. *Id.* Dr. Mayfield offered to help Gordon write a description of her current duties so her request could be considered; the two spent hours working on an appropriate description. *Id.* ¶¶ 39, 49, 52. At the same time, Gordon began complaining that she was asked to do "clerical work" incompatible with her job description. *Id.* at ¶ 40. Dr. Mayfield assured Gordon she was not being "transformed" into an administrative assistant, a job Gordon felt was beneath her skill and education level. *Id.* at ¶¶ 40, 41, 43. Gordon continued to object to the "debasing of her position" despite Dr. Mayfield's assurances that Gordon was only asked to perform necessary coordinator duties. *Id.* at ¶ 43; Ex. D1 at ¶ 11. Because of Gordon's complaints, a number of duties – ones she performed while working for Dr. Oden – had to be reassigned to other staff members. *Id.* at ¶ 48. Dr. Mayfield ultimately sought help from human resources and an associate provost to find Gordon a new position commensurate with her expectations. *Id.* at ¶¶ 51-55, 57. However, no positions were available. *Id.* at ¶ 58.

After a series of misunderstood emails regarding pay increases for two unrelated employees, Gordon accused Dr. Mayfield via email of improperly discussing the pay increase/job duties issue with other office staff. *Id.* at ¶¶ 59-63. Gordon copied the university provost and associate provost on the accusatory email. *Id.* at ¶ 63. When Dr. Mayfield confronted Gordon for involving those outside the dean's office, Gordon erupted. She shouted at Dr. Mayfield, stating: "you will not debase my job description;" "I am not here to fill out forms;" and "the job description is not the problem–you are the problem." *Id.* at ¶¶ 64, 65. Gordon's yelling was heard throughout the dean's office. *Id.* at ¶ 65. Shortly after, Dr. Mayfield met with university personnel, including the provost and general counsel, to discuss the incident. *Id.* at ¶ 69. The decision was made to fire Gordon. *Id.*

3

at ¶ 75. She was formally terminated on September 14, 2005. *Id.* at ¶ 72.

Gordon filed this suit against the Board and the university. She alleges two claims under the FMLA: (1) denial of her substantive right to take medical leave; and (2) retaliatory discharge for taking leave. Compl. at ¶¶ 30-38.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Board has the initial burden of demonstrating it is entitled to summary judgment. *Continental Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). If the Board meets its burden, Gordon must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. *Id.*; FED. R. CIV. P. 56(e). Gordon's failure to respond to the summary judgment motion does not result in automatic judgment. *Raymond*, 442 F.3d at 608. The burden of persuasion remains with the Board to show it is entitled to judgment as a matter of law. *Id.*

### II. The Family and Medical Leave Act

The FMLA guarantees eligible employees 12 weeks unpaid leave per year for various reasons, including serious health conditions rendering the employee unable to perform her job. 26 U.S.C. § 2612(a)(1)(D). It is unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the statute. 26 U.S.C. § 2615(a)(1);

4

*Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 804 (7th Cir. 2001). Aggrieved employees may sue under theories of discrimination/retaliation or interference/entitlement. *Kauffman v. Federal Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). "[T]he difference is that the first type of claim requires proof of discriminatory or retaliatory intent while the latter requires only proof that the employer denied the employee his or her entitlements under the Act." *Id.* Employees are not afforded greater rights than they would otherwise have merely because they took FMLA leave. *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003).

### A. Interference/Entitlement Claim

Gordon claims she was entitled to medical leave under the FMLA and the Board interfered with her entitlement. To prevail on an interference/entitlement claim, Gordon must prove she was entitled to FMLA benefits and the Board denied her those benefits. *Kohls*, 259 F.3d at 804; *Larson v. Endodontic & Periodontic Assoc., Ltd.*, No. 04 C 7305, 2006 WL 2038600, at *5 (N.D. Ill. July 17, 2006) (Hibbler, J.). She must also prove the denial of benefits caused her injury. 29 U.S.C. § 2617(a) (statute provides no relief unless the employee has been prejudiced by a violation); *Harrell v. U.S. Postal Serv.*, 445 F.3d 913, 928-29 (7th Cir. 2006).

The Board does not dispute that Gordon was entitled to medical leave under the FMLA. The university is a covered employer under the statute; Gordon worked continuously for the university since January 2002; and she suffered from breast cancer, a serious medical condition. Def. Facts at ¶¶ 3, 18; 29 U.S.C. §§ 2611(2)(A) and (4) (detailing the FMLA's years- and hours-in-service eligibility requirements and defining which employers are subject to the FMLA's provisions); *Burnet v. LFW, Inc.*, 472 F.3d 471, 478-79 (7th Cir. 2006). However, the Board contends it is entitled to summary judgment because Gordon was not denied FMLA benefits and suffered no injury.

5

According to the Board, Gordon's termination was unrelated to her medical leave.

Viewing the facts in the light most favorable to Gordon, summary judgment is appropriate. The record demonstrates Gordon sought intermittent leave for cancer treatment and recovery from January to September 2005. Def. Facts. at ¶¶ 18-24, 27, 37. She was never denied leave by any of her supervisors or the university's human resources department. *Id.* at ¶¶ 20, 38, 78. She was fully paid for all periods of leave. *Id.* at ¶ 24. When her treatment was complete, she returned to her coordinator position with no diminution in salary. *Id.* at ¶ 21. Gordon offers no evidence to the contrary. In other words, Gordon received all the medical leave she requested and the Board never interfered. *See Karl v. City of Chicago*, No. 05 C 6632, 2007 WL 317032, at *4 (N.D. Ill. Jan. 25, 2007) (Darrah, J.) (summary judgment granted for defendant where plaintiff did not interfere with defendant's medical leave).

Further, there is no evidence that Gordon suffered an injury caused by the Board's interference with her FMLA rights. The record indicates Gordon was not fired for taking leave. Rather, she was fired for refusing to perform "clerical tasks" and for insubordination. It is undisputed that Gordon complained about and refused to perform tasks she perceived as beneath her skill level. Def. Facts at ¶¶ 40, 43. Job duties were shuffled to other staff members as a result. *Id.* at ¶ 48. This was the case even though her written job description provided she was required to "assist the Dean" and perform "[o]ther duties as assigned." *Id.* at ¶¶ 9, 10; Ex. G at Ex. 1. The dean had discretion to recast job duties and assign tasks to ensure the office ran smoothly. *Id.* Gordon's refusal to perform support duties was especially problematic because Dr. Mayfield had just started as acting dean. *Id.* at ¶ 6, 25, 26. Gordon publically shouted at Dr. Mayfield in an accusatory manner. *Id.* at ¶¶ 64, 65. These transgressions provided ample cause for Gordon's termination. *See*

*Kirk v. Federal Prop. Mgt. Corp.*, 22 F.3d 135, 139 (7th Cir.1994) (insubordination grounds for termination).

The Board presents sufficient evidence that Gordon was fired for reasons unrelated to her medical leave. There is no genuine issue of material fact that Gordon was provided all substantive rights under the FMLA and the Board did not interfere with those rights. *See Phelan*, 347 F.3d at 684 (no FMLA violation when employee dismissed for poor job performance even while on leave; employee not entitled to greater rights merely by taking leave); *Karl*, 2007 WL 317032, at *4 (summary judgment appropriate where no harm to plaintiff because he was discharged for excessive absences, not by defendant violating the FMLA).

### B.    Discrimination/Retaliation Claim

Gordon claims she was fired in retaliation for taking medical leave allowed by the FMLA. In addition to proscribing interference with employees' substantive rights, the FMLA prohibits employers from "discriminating against employees . . . who have used FMLA leave." 29 C.F.R. § 825.220(c); *see also* 29 U.S.C. § 2615(b); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). FMLA retaliation/discrimination claims are evaluated similarly to other employment discrimination statues. *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999). Therefore, Gordon may either offer direct evidence of the Board's discrimination, or she may proceed under the indirect burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Buffone v. Rosebud Rest., Inc.*, No. Civ. A. 05 C 5551, 2006 WL 1843366, at *6 (N.D. Ill. June 28, 2006) (Conlon, J.). Because Gordon presents no direct evidence

7

of discrimination, the court applies the burden-shifting framework.[1]

Under *McDonnell Douglas*, Gordon must first establish a *prima facie* case of discrimination. 411 U.S. at 802. In the FMLA context, this means she must show that: (1) she availed herself of a protected right under the FMLA; (2) she was subjected to an adverse employment action even though she performed her job satisfactorily; and (3) she was treated less favorably than other similarly situated employees who did not take leave. *Buie*, 366 F.3d at 503; *Stone v. City of Indianapolis*, 281 F.3d 640, 643-44 (7th Cir. 2002). Once a *prima facie* case is established, the burden shifts to the Board to articulate a non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802-03. If the Board meets that burden, Gordon may rebut its evidence by showing that the Board's reason was a pretext for discrimination. *Id.* at 803-05; *see also Buie*, 366 F.3d at 503. Gordon must present evidence that calls into question the veracity of the Board's explanation. *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) ("[p]retext is more than a mistake on the part of the employer; it is a phony excuse"). The ultimate burden of proof remains with Gordon at all times. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

The Board contends summary judgment is warranted because Gordon fails to establish a *prima facie* case of discrimination. There is no dispute Gordon meets the first factor and part of the second: she took FMLA leave and was subjected to an adverse employment action. Def. Facts at ¶¶ 18-24, 27, 37, 72. But she fails to demonstrate the remaining factors. The record is devoid of

---

[1]There is temporal proximity between Gordon's leave and her termination. Def. Facts at ¶¶ 18-24, 27, 37. Temporal proximity is not enough to establish a genuine issue of material fact under a direct discrimination theory. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004); *Haywood v. Lucent Tech. Inc.*, 323 F.3d 524, 531-32 (7th Cir. 2003) ("causal connection" required between plaintiff's discharge and taking FMLA leave under direct evidence theory).

evidence that Gordon performed her job satisfactorily. Indeed, the record indicates she refused to perform necessary duties and was insubordinate to her direct superior. The complaint's conclusory allegations are insufficient to carry her burden. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) (evidence considered at summary judgment must be admissible at trial under Fed. R. Evid.). Because Gordon's acts justified termination, she cannot demonstrate that her job performance was acceptable. *See Kirk*, 22 F.3d at 139 (employee who is insubordinate does not perform job satisfactorily).

The record also lacks any evidence that other similarly situated employees not taking medical leave were treated more favorably than Gordon. While other staff members are presumably still employed at the university, Gordon presents no evidence allowing a meaningful comparison with her "would-be comparators." *Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 952 (7th Cir. 2006). There is no description of their job duties, employment history, disciplinary history, or medical leave. The lack of evidence is fatal to Gordon's claim. *Id.* (without meaningful comparison data, circumstantial evidence not enough for a reasonable jury to find in plaintiff's favor); *Karl*, 2007 WL 317032, at *5. Viewing the facts in Gordon's favor, there is no genuine issue of material fact that she has failed to demonstrate a *prima facie* case of discrimination.

Even assuming a *prima facie* case, summary judgment must still be granted. The Board has submitted ample evidence that Gordon's termination was based on poor job performance and insubordination. In fact, it is unrefuted that Dr. Oden, Dr. Mayfield, and the university's human resources department tried to accommodate Gordon at every turn. Def. Facts at ¶¶ 20-23, 38, 57, 80. Only after Gordon screamed at Dr. Mayfield was she terminated. *Id.* ¶¶ at 70-72. Gordon provides nothing to rebut the Board's well-supported, non-discriminatory reason for firing her. Nor does she

offer any evidence challenging the Board's motives. Gordon fails to demonstrate the Board's stated basis for terminating her was pretextual. *Karl*, 2007 WL 317032, at *6; *Buffone*, 2006 WL 1843366, at *6. Accordingly, no reasonable jury could infer that Gordon's termination was discriminatory.

## CONCLUSION

The Board's unopposed summary judgment motion is granted.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

April 26, 2007

10